IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PAPPAS LIQUIDATING TRUST,<br><br>Debtor.[1] | ) Chapter 11<br>)<br>) Case No. 08-10949 (LSS)<br>)<br>) Jointly Administered<br>)<br>) <u>Bidding Procedures Objection Deadline</u>: July 30, 2015 at 4:00 p.m. (ET)<br>) <u>Bidding Procedures Hearing Date</u>: August 6, 2015 at 11:00 a.m. (ET)<br>) <u>Bid Deadline</u>: October 19, 2015 at 5:00 p.m. (ET)<br>) <u>Auction</u>: October 27, 2015 at 10:00 a.m. (ET)<br>) <u>Sale Objection Deadline</u>: November 2, 2015 at 12:00 p.m. (ET)<br>) <u>Sale Hearing Date</u>: November 4, 2015 at 10:00 a.m. (ET) |

**MOTION OF DAVID P. STAPLETON, AS LIQUIDATING TRUSTEE
UNDER THE CHAPTER 11 PLAN, FOR ENTRY OF ORDERS:
(I) ESTABLISHING BIDDING AND SALE PROCEDURES; (II) AUTHORIZING
THE TRUSTEE TO EXERCISE THE LIQUIDATING TRUST'S INTERESTS IN
CERTAIN NON-DEBTOR ENTITIES TO AUTHORIZE A SALE
OF THEIR ASSETS; AND (III) GRANTING RELATED RELIEF**

David P. Stapleton, in his capacity as successor trustee (the "<u>Liquidating Trustee</u>") of the Pappas Liquidating Trust (the "<u>Liquidating Trust</u>") established pursuant to the *Debtors' First Amended Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* [D.I. 1153] (the "<u>Plan</u>") and this Court's order (the "<u>Confirmation Order</u>")[2] [D.I. 1166], by and through his undersigned counsel, hereby moves (the "<u>Motion</u>") the Court, pursuant to sections 105 and 1142 of the Bankruptcy Code, Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rules 2002-1 and 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), for the entry of:

---

[1] Harry J. Pappas and Stella A. Pappas were the debtors in these jointly administered chapter 11 proceedings, but they obtained their bankruptcy discharge pursuant to 11 U.S.C. §§ 1141(d) and 524 on January 3, 2012, at which time liability for discharged claims was assigned to, and assumed by, the Pappas Liquidating Trust.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.

-1-

(i) an order (the "Bidding Procedures Order"), substantially in the form attached hereto as **Exhibit A**:

(a) approving proposed auction and bid procedures (the "Bidding Procedures") in connection with the sale (the "Sale") of certain television station assets in Nebraska (collectively, the "Nebraska Television Assets");

(b) scheduling an auction (the "Auction") and a final sale hearing (the "Sale Hearing") in connection with the Sale; and

(d) approving the form and manner of notice of the Auction and the Sale Hearing, including the form and manner of notice (the "Auction and Hearing Notice") attached hereto as **Exhibit B**; and

(ii) an order (the "Authorization Order"), substantially in the form attached hereto as **Exhibit C**, authorizing the Liquidating Trustee (i) to exercise the Trust's interest in non-debtors Pappas Telecasting of Central Nebraska LP and Pappas Telecasting of Lincoln LLC (together, the "Non-Debtor Entities")[3] to cause the Sale of their respective Nebraska Television Assets, including all right, title and interest thereto and all permitted liabilities in connection therewith, to one or more successful bidders (the "Successful Bidder(s)") at the Auction, and (ii) granting certain related relief.

In support of this Motion, the Liquidating Trustee respectfully represents as follows:

**Background**

1. On May 12, 2008 (the "Petition Date"), involuntary petitions under chapter 7 of the Bankruptcy Code were filed against Harry J. Pappas and Stella A. Pappas (the

---

[3] The Non-Debtor Entities own, directly or indirectly, the Nebraska Television Assets.

"Pappases"). On May 27, 2008 (the "Order Date"), the Court granted the Debtors' motion to convert their cases to cases under chapter 11 of the Bankruptcy Code, and entered an order for relief under chapter 11 with respect to the Debtors. On June 18, 2008, the Court entered an order directing the joint administration of the Debtors' chapter 11 cases.

2. From the Order Date until the Effective Date of the Plan, the Debtors managed the property of their bankruptcy estates as debtors in possession pursuant to §§ 1107 and 1115(b) of the Bankruptcy Code. No official committee or chapter 11 trustee was appointed.

3. On November 10, 2011, the Court entered the Confirmation Order.

4. On December 21, 2011, the Liquidating Trust was formed pursuant to the Plan and Liquidating Trust Agreement. The Effective Date of the Plan occurred on January 3, 2012, at which time all non-exempt property of the Debtors vested in the Liquidating Trust (or Pappas GP, LLC, as applicable) pursuant to Article 6(C) of the Plan, and Harry J. Pappas was appointed as the Initial Liquidating Trustee of the Liquidating Trust. The property vesting in the Liquidating Trust included, among other things, the Nebraska Television Assets.

5. On March 27, 2012, Lee W. Shubert, Esquire became the Successor Liquidating Trustee in accordance with Article 5(B)(3) of the Plan.

6. On August 27, 2013, Mr. Shubert and Comerica Bank entered into the *Stipulation Regarding Resignation of Liquidating Trustee and Designation of Successor Liquidating Trustee* (the "Resignation Stipulation") [D.I. 1428, Ex. B].

7. On October 1, 2013, the Court entered an Order [D.I. 1459] approving David P. Stapleton as Successor Liquidating Trustee, to be effective upon Mr. Shubert's resignation. On December 9, 2013, Mr. Shubert resigned in accordance with the Resignation Stipulation and Mr. Stapleton was appointed Successor Liquidating Trustee [D.I. 1506].

#34333831 v10

8.  Since his appointment, the Liquidating Trustee, in consultation with his staff and professionals, has evaluated the nature and value of the assets of the Liquidating Trust and the Non-Debtor Entities it controls, including the Nebraska Television Assets, so that the assets can be marketed and sold for the greatest return to creditors.

## THE NEBRASKA TELEVISION ASSETS

9.  The Nebraska Television Assets to be sold include all of the assets, real and personal, used and useful in the operation of the following Nebraska television stations (the "Stations"), including but not limited to an assignment of the licenses and authorizations for such Stations issued by the Federal Communications Commission, broadcast equipment, and contacts, unless expressly excluded in the definitive asset purchase agreement:

> (i) KHGI-TV in Kearney, Nebraska (Fac. ID 21160), owned by non-debtor Pappas Telecasting of Central Nebraska LP;
>
> (ii) KWNB-TV in Hayes Center, Nebraska (Fac. ID 21162), owned by non-debtor Pappas Telecasting of Central Nebraska LP;
>
> (iii) KFXL-TV in Lincoln, Nebraska (Fac. ID 84453), owned by non-debtor Pappas Telecasting of Lincoln LLC;
>
> (iv) KHGI-CD in North Platte, Nebraska (Fac. ID 168339), owned by non-debtor Pappas Telecasting of Central Nebraska LP;
>
> (v) KHGI-LD, in O'Neill, Nebraska (Fac. ID 127682), owned by non-debtor Pappas Telecasting of Central Nebraska LP; and
>
> (vi) KWNB-LD, in McCook, Nebraska (Fac. ID 126405), owned by non-debtor Pappas Telecasting of Central Nebraska LP.

Station KFXL-TV is licensed to non-debtor Lincoln Broadcasting, LLC, a Nebraska limited liability company. The FCC licenses of each of the other Stations included in the Nebraska Television Assets are held by Non-Debtor Entity Pappas Telecasting of Central Nebraska, L.P., a Delaware limited partnership.

**THE PROPOSED SALE PROCESS**

10. By this Motion, the Liquidating Trustee seeks approval of an approximate 90 day sale process for the Nebraska Television Assets.[4]

11. The Liquidating Trustee proposes to sell the Nebraska Television Assets, including all right, title and interest thereto and all permitted liabilities in connection therewith. To do so, the Liquidating Trustee intends to conduct an auction sale process that provides an opportunity for parties to purchase all or certain of the Nebraska Television Assets. With the assistance of Kalil & Co. ("Kalil"), the Liquidating Trustee's broker that specializes in the sale of broadcast stations and related assets, the Liquidating Trustee anticipates a comprehensive marketing process to financial and strategic buyers.

12. The Liquidating Trustee seeks entry of the Bidding Procedures Order:

   a. approving (i) the Liquidating Trustee's proposed Bidding Procedures for marketing and soliciting bids for the Nebraska Television Assets, which procedures are attached as Exhibit 1 to the Bidding Procedures Order and (ii) the Auction and Hearing Notice;

   b. establishing October 19, 2015 at 5:00 p.m. (Eastern Time) as the deadline for the submission of bids for all or certain of the Nebraska Television Assets (the "Bid Deadline");

   c. scheduling the Auction, if necessary, for October 27, 2015 at 10:00 a.m. (Eastern Time); and

   d. scheduling the Sale Hearing for November 4, 2015 at 10:00 a.m. (Eastern Time), to consider the sale of the Nebraska Television Assets to the successful bidder(s) at the Auction.

---

[4] This period covers only the Auction process and does not include the period after the Sale Hearing during which applications for approval of the assignments will be filed with and considered by the FCC. No sale that includes the assignment of an FCC license may be consummated prior to FCC approval.

**The Proposed Bidding Procedures**

13. The following is a summary of the proposed Bidding Procedures.[5]

14. <u>Participation Requirements</u>.  Unless otherwise ordered by the Court, to participate in the bidding process, each person or entity (each, an "<u>Interested Party</u>") will be required to deliver (unless previously delivered) the following materials to the Notice Parties (defined below), so as to be received no later than the Bid Deadline: (a) an executed confidentiality agreement in form and substance satisfactory to the Liquidating Trustee, which by its terms will inure to the benefit of the Successful Bidder(s); (b)  a statement and other factual support demonstrating to the Liquidating Trustee's satisfaction a *bona fide* interest in purchasing any of the Nebraska Television Assets; (c) sufficient information, as determined by the Liquidating Trustee, in consultation with his advisors, to allow the Liquidating Trustee to determine that the Interested Party has (i) the financial wherewithal to consummate a sale transaction (each, a "<u>Sale Transaction</u>") for the Nebraska Television Assets in cash or an equivalent with readily ascertainable and quantifiable economic value in an amount not less than $30,000,000.00, including financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Liquidating Trustee in his discretion), and (ii) any required internal corporate, legal or other authorizations, to consummate a Sale Transaction for the Nebraska Television Assets in cash or an equivalent with readily ascertainable and quantifiable economic value in an amount not less than $30,000,000.00; (d) (i) sufficient information, as determined by the Liquidating Trustee, in consultation with his advisors, to allow the Liquidating Trustee to determine that the Interested Party is financially and legally qualified to be a Federal Communications Commission licensee of the station or stations included in its bid, and (ii) a

---

[5]    The summary describes each provision of the Bidding Procedures that Local Rule 6004-1 requires to be highlighted in a bidding procedures motion.

statement of whether waiver of any FCC rule, regulation or policy would be required to render an application(s) for assignment of the Station or Stations to such Interested Party grantable, as well as the rules, regulations or policies that would need to be waived and an explanation of the basis and rationale for a waiver and why the Interested Party believes the waiver would be granted; and (e) the items comprising a bid.  A person or entity that has a *bona fide* interest in any of the Nebraska Television Assets and delivers the required information (other than the bid) to the Liquidating Trustee is hereinafter referred to as a "Potential Bidder."  After a Potential Bidder delivers all of the materials required above (other than the bid), the Liquidating Trustee will allow each such Potential Bidder access to the Data Room (defined below) containing due diligence information regarding the Nebraska Television Assets.

15. Determination by the Liquidating Trustee.  The Liquidating Trustee, with the assistance of his advisors, will (a) determine whether any Potential Bidder is a Qualified Bidder, (b) receive bids from Qualified Bidders, (c) evaluate and negotiate such bids, and (d) conduct the Auction.

16. Due Diligence.  The Liquidating Trustee or his advisors will establish an electronic data room (the "Data Room") into which substantial information about the Nebraska Television Assets will be deposited.  All Potential Bidders will be granted full access to the Data Room by Kalil.  The Liquidating Trustee, with the assistance of his advisors, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Liquidating Trustee or his advisors will simultaneously provide access to such materials to all Potential Bidders by putting them in the Data Room.  Neither the Liquidating Trustee nor any of his advisors will be obligated to furnish

any information of any kind whatsoever relating to the Nebraska Television Assets to any person or entity who is not a Potential Bidder and who does not comply with the requirements set forth in the Bidding Procedures.

17. <u>Bid Deadline</u>.  On or before the Bid Deadline, a Potential Bidder that desires to make a bid for all or a portion of the Nebraska Television Assets is required to deliver written copies of its bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) format to (i) the Liquidating Trustee at david@stapletoninc.com; (ii) Frank Higney, at kalil@kalilco.com; and (iii) counsel to the Liquidating Trustee, David B. Stratton, Esq., at strattond@pepperlaw.com (collectively, the "<u>Notice Parties</u>").

18. <u>Bid Requirements</u>.  All bids must: (a) identify the legal name of the Potential Bidder (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transaction); (b) provide that the Potential Bidder offers to purchase the Nebraska Television Assets or a portion thereof at the proposed purchase price (the "<u>Proposed Purchase Price</u>"), in cash or an equivalent with readily ascertainable and quantifiable economic value, and upon the terms and conditions set forth in the form of asset purchase agreement enclosed therewith, marked (the "<u>Marked Agreement</u>") to show any proposed amendments and modifications to the form of asset purchase agreement (the "<u>Form APA</u>") included in the Data Room; (c) if a bid is for certain of the Nebraska Television Assets but not all, allocate the Proposed Purchase Price for the Nebraska Television Assets included in the bid; (d) include a letter stating that the Potential Bidder (i) has not engaged in any collusion with respect to its bid, and (ii) acknowledges and represents that it has had an opportunity to conduct any and all due diligence regarding the Nebraska Television Assets that are the subject of the Auction prior to making its bid, that it has relied solely upon its own

independent review and investigation in making its bid, that it did not rely on the completeness of any information provided in connection with the Auction or its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Nebraska Television Assets, except as expressly stated in such letter; (e) state that all necessary filings under applicable regulatory, antitrust and other laws will be made (pursuant to the terms and conditions in the applicable bid documents) and that payment of the fees associated with such filings will be made by the Potential Bidder; (f) (i) sufficient information, as determined by the Liquidating Trustee, in consultation with his advisors, to allow the Liquidating Trustee to determine that the Interested Party is financially and legally qualified to be a Federal Communications Commission licensee of the station or stations included in its bid, and (ii) a statement of whether waiver of any FCC rule, regulation or policy would be required to render an application(s) for assignment of the Station or Stations to such Interested Party grantable, as well as the rules, regulations or policies that would need to be waived and an explanation of the basis and rationale for a waiver and why the Interested Party believes the waiver would be granted; (g) be a formal, binding and unconditional bid (except for those conditions expressly set forth in the applicable bid documents), and include a statement that it is not subject to any due diligence and, if such bid is deemed the Successful Bid at the Auction, is irrevocable until Closing, and if not deemed the Successful Bid at the Auction, such bid is irrevocable until the earlier of December 1, 2015 or the first Business Day following the entry of the Authorization Order; (h) include a commitment to close the transactions contemplated by the bid no later than 14 days after entry of a Final FCC Order granting FCC Consent, each as defined below; (i) not entitle such Potential Bidder to a breakup fee, termination fee, expense reimbursement or similar

type of payment or reimbursement; (j) be accompanied by the Good Faith Deposit (as defined in the Bidding Procedures); and (k) be received by the Bid Deadline.

19. A Potential Bidder must accompany its bid with: (a) evidence of available in cash or an equivalent with readily ascertainable and quantifiable economic value to consummate the Sale Transaction in an amount not less than $30,000,000.00; (b) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; (c) a covenant to cooperate with the Liquidating Trustee and his advisors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; (d) if the bid includes a Marked Agreement, a signed statement that if deemed the Successful Bid at the Auction, such bid is irrevocable until Closing, and if not deemed the Successful Bid at the Auction, such bid is irrevocable until the earlier of December 1, 2015 or the first Business Day following the entry of the Authorization Order.

20. The Liquidating Trustee will, in his discretion and in consultation with his advisors, determine whether a bid received from a Potential Bidder for any of the Nebraska Television Assets will constitute a "Qualified Bid" and whether a Potential Bidder that submits such a bid will be considered a "Qualified Bidder." Further, the Liquidating Trustee may, in his discretion and in consultation with his advisors, withdraw some or all of the Nebraska Television Assets from the Auction or Sale for any reason, including but not limited to failure to obtain a minimally-acceptable bid amount for some or all of the Nebraska Television Assets, at any time before entry of an order approving a sale of the Nebraska Television Assets to a Qualified Bidder.

21. The Liquidating Trustee may value a Qualified Bid based upon any and all factors that the Liquidating Trustee deems pertinent, including, among others: (a) the purported amount of the Qualified Bid; (b) contingencies with respect to the Sale Transaction and the ability to close the proposed Sale Transaction on a basis acceptable to the Liquidating Trustee, including whether or not any waivers of the FCC's rules, regulations and/or policies would be required and the likelihood of success in obtaining such waivers, and any incremental costs to the Liquidating Trustee in closing delays; (c) the ability to obtain any and all necessary antitrust or other applicable regulatory approvals or waivers for the proposed Sale Transaction; and (d) any other factors the Liquidating Trustee may deem relevant.

22. <u>Baseline Bids</u>. Only Qualified Bidders are eligible to participate in the Auction. The Liquidating Trustee, in consultation with his advisors, will select what he determines to be the highest and best Qualified Bid or combination of bids that together constitute a Qualified Bid for any portion of the Nebraska Television Assets (the "<u>Baseline Bid(s)</u>") to serve as the starting point at the Auction taking into account all relevant considerations, including the financial condition of the applicable bidder and certainty of closing.

23. <u>Auction</u>. If more than one Qualified Bid is received by the Bid Deadline for either all or the same portion of the Nebraska Television Assets, the Liquidating Trustee will conduct the Auction for the Nebraska Television Assets. The Auction will take place at the offices of Pepper Hamilton LLP, 1313 N. Market Street, Suite 5100, Wilmington, Delaware, at 10:00 a.m. (Eastern Time) on the Auction Date, or such other time as the Liquidating Trustee may notify Qualified Bidders who have submitted Qualified Bids. Only Qualified Bidders will be eligible to attend or participate at the Auction, subject to such limitations as the Liquidation Trustee may impose in consultation with his advisors. A reasonable number of representatives

(as determined by the Liquidating Trustee in his sole and absolute discretion) of the Qualified Bidders will be permitted to attend and observe the Auction.

24.  At the Auction, participants will be permitted to increase their bids and improve their terms; provided that any such increased or improved bid or combination of bids must be a Qualified Bid (except that the Bid Deadline will not apply).  Bidding for any part of the Nebraska Television Assets will start at the purchase price and terms proposed in the applicable Baseline Bid(s).  The Liquidating Trustee, in consultation with his advisors, may commence the Auction by considering any Qualified Bids for portions of the Nebraska Television Assets prior to considering any Qualified Bids for all of the Nebraska Television Assets.

25.  The Liquidating Trustee, with the assistance of his advisors, shall conduct an open Auction on the record, recorded by a court reporter and calling for minimum incremental bids (the "<u>Minimum Overbid</u>") from Qualified Bidders participating in the Auction, with Minimum Overbids being in an amount of not less than $250,000.  The Liquidating Trustee reserves the right to announce reductions or reasonable increases in the Minimum Overbid amounts at any time during the Auction.

26.  Prior to the conclusion of the Auction, the Liquidating Trustee, in consultation with his advisors, will: (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (b) in the exercise of the Liquidating Trustee's good faith business judgment and consistent with the Bidding Procedures, identify the highest or otherwise best offer or collection of offers in respect of the Nebraska Television Assets (the "<u>Successful Bid(s)</u>"); and (c) notify all Qualified Bidders

participating in the Auction, prior to its adjournment, of the Successful Bidder(s) and the amount and other material terms of the Successful Bid(s).  Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Bankruptcy Court, the Liquidating Trustee will not consider bids made after the Auction has been closed.  After determining the Successful Bid(s) for the Nebraska Television Assets, the Liquidating Trustee may determine, in his reasonable business judgment, which Qualified Bid(s) are the next best bids for the Nebraska Television Assets (the "Next Best Bid(s)").

27. <u>Acceptance of Qualified Bids</u>.  The Liquidating Trustee presently intends to consummate the Sale Transaction(s) with the Successful Bidder(s); however, the Liquidating Trustee's presentation of the Successful Bid(s) to the Bankruptcy Court for approval does not constitute the Liquidating Trustee's acceptance of such bid(s).  The Liquidating Trustee will be deemed to have accepted a Successful Bid only when a contract therefor has been executed and such bid has been approved by the Authorization Order.  If a Successful Bidder does not close the applicable Sale Transaction contemplated by the applicable Successful Bid by the date agreed to by the Liquidating Trustee and such Successful Bidder, then the Liquidating Trustee will be authorized, but not required, to move forward with the Sale Transaction with the party that submitted the applicable Next Best Bid, pursuant to the Authorization Order, including to seek an Final FCC Order granting FCC Consent with respect to the party that submitted the applicable Next Best Bid.

28. <u>Modification of Bidding Procedures</u>.  The Liquidating Trustee may at any time amend the Bidding Procedures or adopt rules for the Auction in any manner that he determines in good faith will best promote the goals of the bidding process and which are not

inconsistent with the terms of the Bidding Procedures, including extending or modifying any of the dates described therein and adjourning the Auction.

29. <u>Return of Good Faith Deposit</u>.  The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Liquidating Trustee and while held in escrow will not become property of the Liquidating Trust unless released from escrow pursuant to further order of the Bankruptcy Court.  The Liquidating Trustee will retain the Good Faith Deposits of the Successful Bidder(s) until the Closing of the Sale Transaction(s) unless otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits of the other Qualified Bidders will be returned on the earlier of December 1, 2015 or the first Business Day following the entry of the Authorization Order.  At the Closing of the Sale Transaction(s) contemplated by the Successful Bid(s), the Successful Bidder(s) will be entitled to a credit for the amount of its Good Faith Deposit (not including interest accrued thereon).  Upon the return of the Good Faith Deposits, their respective owners will receive interest that has accrued thereon, if any.

30. <u>"As Is, Where Is" Sale</u>.  Any Sale Transaction will be on an "as is, where is" basis and without representations or warranties of any kind by the Liquidating Trustee, the Liquidating Trust, or their agents, except and solely to the extent expressly set forth in the final Sale Transaction agreement (the "<u>Sale Transaction Agreement</u>") approved by this Court.  Except as otherwise provided in the Sale Transaction Agreement approved by this Court, the Liquidating Trustee will sell all right, title and interest in the Nebraska Television Assets, and all permitted liabilities in connection therewith, to the Successful Bidder(s) at the Auction.

31. <u>FCC Consent</u>.  The Closing on any Sale Transaction will be subject to the submission and approval of an application(s) for FCC consent ("<u>FCC Consent</u>") to the assignment of the FCC licenses of the Stations included in the Nebraska Television Assets

pursuant to a Final Order. As used herein, Final Order shall mean a written action(s) or order(s) issued by the FCC, setting forth the FCC Consent (a) which has not been reversed, stayed, enjoined, set aside, annulled or suspended, and (b) with respect to which (i) no requests have been filed for administrative or judicial review, reconsideration, appeal or stay, and the time for filing any such requests and for the FCC to set aside the action on its own motion has expired, or (ii) in the event of review, reconsideration or appeal, that does not result in the FCC Consent being reversed, stayed, enjoined, set aside, annulled or suspended, and the time for further review, reconsideration or appeal has expired.

32. The Liquidating Trustee believes that the proposed Bidding Procedures provide an appropriate framework for selling the Nebraska Television Assets and will enable the Liquidating Trustee to fully review, analyze and compare all bids received to determine which bid is in the best interests of the Liquidating Trust.

**Potential Stalking Horse Bidding Protections**

33. In order to incentivize potential bidders, the Liquidating Trustee will entertain the possibility of entering into one or more stalking horse agreements (each a "Stalking Horse Agreement") for the sale of some or all of the Nebraska Television Assets, and in connection therewith may agree to certain bid protections, including an expense reimbursement and/or break-up fee, subject to this Court's approval. In order to maximize the value of the Nebraska Television Assets, the Liquidating Trustee submits that the opportunity to enter into a Stalking Horse Agreement that provides bid protections will encourage Potential Bidders to submit bids and participate at the Auction.

34. In the event the Liquidating Trustee enters into a Stalking Horse Agreement with a stalking horse entity (the "Stalking Horse Purchaser"), the Liquidating Trustee will file and serve notice of the proposed Stalking Horse Agreement on the parties receiving

notice of this Motion, no later than two business days after execution of the Stalking Horse Agreement. The notice will include the type and amount of bid protections, if any, any necessary modifications or amendments to the Bidding Procedures, a summary of the Stalking Horse Agreement, a copy of the Stalking Horse Agreement and the date and time of the hearing to approve the Stalking Horse Agreement. Subject to this Court's approval, the Stalking Horse Purchaser will be deemed to be a Qualified Bidder and the Stalking Horse Purchaser's bid will be deemed a Qualified Bid.

### Proposed Notice of the Sale Hearing

35. Pursuant to Bankruptcy Rule 2002(a), the Liquidating Trustee is required to provide parties with 21 days notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time, and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested in the Sale Motion. The Liquidating Trustee proposes that the deadline for objecting to approval of the proposed Sale be November 2, 2015 at 12:00 p.m. (Eastern Time).

36. Within five business days after the entry of the Bidding Procedures Order, the Liquidating Trustee intends to serve the Auction and Hearing Notice by first-class mail, postage prepaid upon the following parties: (a) the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the Pappases; (c) Foothill Capital Corporation; (d) Pappas Capital Partners; (e) Dennis Davis and LeBon Abercrombie, each a limited partner in Pappas Capital Partners; (f) Media Trust Acquisitions LLC; (g) the Federal Communications Commission; (h) with respect to the Nebraska Television Assets (1) applicable taxing authorities, including the Internal Revenue Service, (2) any other federal, state or municipality regulatory agencies the Liquidating Trustee, in consultation with his advisors, believes to have an interest in the disposition of the Nebraska Television Assets, and (3) the attorney general for the State of

Nebraska; (i) parties that the Liquidating Trustee has identified as possibly being interested in acquiring one or more of the Nebraska Television Assets; (j) the beneficiaries of the Liquidating Trust; and (k) all parties requesting notice in this case.

37. The Auction and Hearing Notice will include, among other things, the date, time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested in this Motion, and, will therefore, comply with Bankruptcy Rule 2002(c). The Liquidating Trustee submits that the methods of notice described herein comply fully with Bankruptcy Rule 2002 and constitute good and adequate notice of the proposed sale of the Nebraska Television Assets.

## THE PROPOSED AUTHORIZATION ORDER

38. In addition to approval of the Bidding Procedures, the Liquidating Trustee is respectfully seeking the entry of an Authorization Order, pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, authorizing the Liquidating Trustee to:

    a. exercise the Liquidating Trust's interest in the Non-Debtor Entities to consummate the Sale of their respective Nebraska Television Assets to the Successful Bidder(s); and

    b. granting certain related relief.

39. Section 1142(a) of the Bankruptcy Code provides that "any entity organized … for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court." 11 U.S.C. § 1142(a). Section 1142(b) of the Bankruptcy Code provides that "the court may direct … any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan." 11 U.S.C. § 1142(b). In addition, § 105(a) of the Bankruptcy Code provides, in pertinent part, that the Court may "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

-17-

#34333831 v10

40. The Liquidating Trust Agreement authorizes the Liquidating Trustee "to perform any all acts necessary or desirable to accomplish the purposes of the Liquidating Trust," including specifically to "sell, liquidate, transfer, distribute, or otherwise dispose of the Liquidating Trust Assets …." Trust Agreement, at §§ 3.1 and 3.1.2. The Liquidating Trustee must obtain Court approval (i) concerning "any matter involving any sale or other disposition of an asset of the Liquidating Trust, or any release, modification, or waiver of existing rights as to an asset of the Liquidating Trust, if the asset at issue exceeds $100,000 in value," and (ii) in order "to cause any Affiliate to incur any … indebtedness outside the ordinary course of business …." Id. at §§ 3.4.1 and 3.4.2. But otherwise, the Liquidating Trustee may sell or dispose of the assets of the Liquidating Trust without Court approval. See id. at § 3.5 ('Except as provided in the Plan or otherwise specified in this Agreement …, the Successor Liquidating Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder …."). It logically follows that the Liquidating Trustee may also cause the Non-Debtor Entities to sell or dispose of the Nebraska Television Assets without Court approval. But because it is anticipated that the proposed Sale will exceed the $100,000 threshold applicable to sales of Liquidating Trust Assets, the Liquidating Trustee believes it prudent to obtain this Court's express approval of the Sale of the Nebraska Television Assets, on notice to parties in interest. See id. at § 3.5 (permitting the Liquidating Trustee "to submit to the Bankruptcy Court any question or questions regarding which [he] may desire to have a ruling … with respect to any specific action proposed to be taken … with respect to the Liquidating Trust Assets.").

41. In the exercise of his sound business judgment, the Liquidating Trustee believes that the proposed sale of the Nebraska Television Assets pursuant to the Bidding

#34333831 v10

Procedures will result in the realization of substantial value for the Liquidating Trust, and is in the best interest of the Liquidating Trust and its beneficiaries. The Liquidating Trustee submits that entry of an order authoring the Sale of the Nebraska Television Assets is necessary and appropriate to consummate the Plan and to carry out the provisions of the Bankruptcy Code.

### **Waiver of Rules 6004(h) and 6006(d)**

42.     The Liquidating Trustee requests that, upon entry of the Authorization Order, the Court waive the 14 day stay requirements of Bankruptcy Rules 6004(h) and 6006(d). The waiver of the 14 day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) will allow any Sale to close as soon as possible and prevent further delay in the administration of these cases. The Liquidating Trustee respectfully submits that the Court waive the 14 day stay requirements contained in Bankruptcy Rules 6004(h) and 6006(d).

### **Notice**

43.     Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) the Pappases; (c) Media Trust Acquisitions, LLC; (d) parties that the Liquidating Trustee has identified as possibly being interested in acquiring one or more of the Nebraska Television Assets; and (e) all parties requesting notice in this case.

**[REST OF PAGE INTENTIONALLY LEFT BLANK]**

#34333831 v10

WHEREFORE, the Liquidating Trustee respectfully requests that the Court (i) enter the Bidding Procedures Order, in substantially the form attached hereto as <u>Exhibit A</u>, (ii) enter the Authorization Order, in a form attached hereto as <u>Exhibit C</u>, and (iii) grant such other and further relief to the Liquidating Trustee as the Court may deem proper.

| | |
|---|---|
| Dated: July 15, 2015<br>Wilmington, Delaware | PEPPER HAMILTON LLP<br><br> /s/ Michael J. Custer<br>David B. Stratton (DE 960)<br>Evelyn J. Meltzer (DE 4581)<br>Michael J. Custer (DE 4843)<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>Wilmington, Delaware 19899-1709<br>Telephone: (302) 777-6500<br>Facsimile: (302) 421-8390<br><br>ATTORNEYS FOR THE LIQUIDATING TRUSTEE |