IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| PAPPAS LIQUIDATING TRUST, | ) ) | Case No. 08-10949 (LSS) |
| Debtor.[1] | ) ) | Jointly Administered |
| | ) ) | **Related Docket No. 1822, 1844, 1873** |

## DECLARATION OF FRANK HIGNEY IN SUPPORT OF THE SALE OF THE NEBRASKA TELEVISION ASSETS TO SINCLAIR TELEVISION GROUP, INC.

I, Frank Higney, hereby declare as follows:

1. I am a media broker for Kalil & Co., Inc. ("Kalil"). Kalil was retained by David P. Stapleton, in his capacity as successor trustee (the "Liquidating Trustee") of the Pappas Liquidating Trust (the "Liquidating Trust") to assist in the marketing and sale of certain television station assets in Nebraska including television stations (i) KHGI-TV, Kearney, Nebraska (ii) KWNB-TV, Hayes Center, Nebraska; (iii) KHGI-CD, North Platte, Nebraska; (iv) KHGI-LD, O'Neil, Nebraska; (v) KWNB-LD, McCook, Nebraska and (vi) KFXL-TV, Lincoln, Nebraska (collectively, the "Nebraska Television Assets").

2. Kalil has been in the media brokerage business for over forty years and is involved in all phases of the brokerage business including radio, television, outdoor and towers. Kalil conducts business throughout the United States and is widely recognized as the top media brokerage organization in the country. I have been employed by Kalil for twenty-three years. Prior to being employed by Kalil, I was the chief operating officer at BIA Consulting which is

---

[1] Harry J. Pappas and Stella A. Pappas were the debtors in these jointly administered chapter 11 proceedings, but they obtained their bankruptcy discharge pursuant to 11 U.S.C. §§ 1141(d) and 524 on January 3, 2012, at which time liability for discharged claims was assigned to, and assumed by, the Pappas Liquidating Trust.

#36233401 v2

now BIA Kelsey, the leading appraisal firm in the broadcast industry. In my career, I have worked on hundreds of deals involving television station sales or assignments.

3. Kalil first began marketing the Nebraska Television Assets on August 21, 2015, when the Bankruptcy Court entered the Order (I) Approving Bid and Sale Procedures for the Nebraska Television Assets and (II) Scheduling an Auction and Sale Hearing (the "<u>Bidding Procedures Order</u>")[2] (Docket no. 1844). The marketing efforts with respect to the Nebraska Television Assets are the most extensive marketing efforts ever undertaken by Kalil in connection with the sale of any asset. Additionally, the marketing of the Nebraska Television Assets was in full compliance with the Bidding Procedures Order.

4. In order to target potential strategic buyers, Kalil marketed the Nebraska Television Assets on both the website and in the electronic newsletter of (i) TVNewsCheck.com, the largest on-line television trade source; (ii) Radio and Television Business Report and (iii) Broadcasting and Cable Magazine. Further efforts by Kalil to reach potential strategic buyers included placing full page advertisements in both the SNL Kagan: Broadcast Investor: Deals and Finance and the SNL Kagan: Cable TV Investor: Deals and Finance as well as a third of a page advertisement in the Broadcasting and Cable Magazine. Moreover, to ensure that financial buyers were also made aware of the opportunity to purchase the Nebraska Television Assets, Kalil placed a full page advertisement in The Daily Deal, which covers news and analysis about transactional activities in a wide range of industries. Finally, in addition to Kalil's team of brokers contacting by telephone potential buyers, Kalil sent direct mailings to 565 entities from its own internal list of contacts in the media industry and financial community.

---

[2] Terms not defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

5. As a result of Kalil's extensive and thorough marketing efforts (i) 39 parties reached out to Kalil and requested information concerning the Nebraska Television Assets; (ii) 17 parties executed non-disclosure agreements; (iii) 14 parties gained access to the electronic data room (the "Data Room"), which opened on August 24, 2015 and contained 495 documents, comprised of 5,639 pages of information regarding the Nebraska Television Assets and (iv) 3 parties conducted site visits. Once granted access to the Data Room, each potential bidder had a full and complete opportunity to conduct due diligence, request information and ask questions of management in order to determine whether to bid on the Nebraska Television Assets.

6. The Liquidating Trustee received four bids for the Nebraska Television Assets. The four bidders were (i) Sinclair Television Group ("Sinclair"); (ii) Media Trust Acquisitions ("Media Trust"); (iii) Citadel Communications ("Citadel") and (iv) Cala Broadcast Partners ("Cala"). Two of the bidders were the entities identified by Kalil as the most strategic potential buyers. Each of these bids was deemed a Qualified Bid by the Liquidating Trustee and all four bidders were invited to attend the Auction.

7. The Auction was held on October 27, 2015 at the Wilmington, Delaware office of Pepper Hamilton LLP, counsel to the Liquidating Trustee. A representative for each of Sinclair, Media Trust, Citadel and Cala attended the Auction. At the conclusion of the Auction, the Liquidating Trustee declared Sinclair's bid of $31,250,000 plus the selling entities' retained accounts receivable, which totals approximately $2,000,000, to be the highest and best bid for the Nebraska Television Assets and the Auction was closed. Sinclair's final bid of $31,250,000 for the Nebraska Television Assets represents a material increase over Sinclair's initial bid of $28,000,000. Based on the nature of the assets for sale and the universe of potential bidders, in

#36233401 v2

my opinion both the number of actual bidders and the ultimate sale price of $31,250,000 are within expected ranges.

8. Sinclair is one of the largest and most diversified television broadcasting companies in the country. Sinclair owns and operates, programs or provides sales services to 164 television stations in 79 markets. Sinclair Broadcast Group, Inc. was founded in 1986, went public in 1995 and is traded on the NASDAQ Global Select Market under the ticker symbol SBGI.

9. The Nebraska Television Assets include the FOX and ABC affiliates in Lincoln-Hasting-Kearney DMA. As Sinclair currently owns the FOX affiliate in the Omaha DMA, clear synergies exist between Sinclair's current business operations in Nebraska and their desire to acquire the Nebraska Television Assets.

10. I believe that Sinclair will be able to obtain the necessary FCC Consents to acquire the Nebraska Television Assets and, that subject to such consents and approval by this Bankruptcy Court, will close on the sale of the Nebraska Television Assets.

11. I am aware of the statement (the "Statement") (Docket No. 1877) filed by Harry A. Pappas and Stella A. Pappas (the "Pappases") regarding the sale of the Nebraska Television Assets and disagree with the statements made therein. If the market believed that the value of the Nebraska Television Assets would be increased by upcoming FCC spectrum reverse auction (the "FCC Auction"), potential bidders would have bid accordingly. They did not. Moreover, the Broadcast Cash Flow (the "BCF") for the Nebraska Television Assets is not $4,500,000 as alleged by the Pappases but rather is $4,200,000 for 2014 and is projected to be $3,800,000 in 2015. A BCF multiple is not an appropriate metric for determining the value of the Nebraska Television Assets because a BCF multiple is a theoretical estimate of value. The

-5-

best way to determine value is through an extensive marketing and auction process as occurred here. Accordingly, $31,250,000 reflects the fair market value for the Nebraska Television Assets.

12. For all of the foregoing reasons, I believe that the Bankruptcy Court should authorize the Liquidating Trustee to exercise the Liquidating Trust's interest in non-debtors Pappas Telecasting of Central Nebraska LP, Lincoln Broadcasting, LLC and Pappas Telecasting of Lincoln LLC to cause the sale of their respective Nebraska Television Assets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 3, 2015

Frank Higney